IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 18-382 |
| v. | ) |
| | ) |
| GARY CACCHIONE, | ) |
| | ) |
| Defendant. | |

**MEMORANDUM OPINION**

This is an action brought by Plaintiff United States of America (hereinafter "the Government") pursuant to 26 U.S.C. § 7402, and 28 U.S.C. §§ 1340 and 1345 to reduce to judgment assessments made against Defendant Gary Cacchione ("Cacchione") for unpaid federal income taxes and trust fund recovery penalties. (Docket No. 1). The Government moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Docket No. 87). Cacchione opposed the motion. (Docket No. 92). After the Government filed its reply (Docket No. 98), the Court held oral argument on the Government's motion on January 11, 2024. (Docket No. 102).

For the reasons set forth herein, the Government's motion is granted.

**I.   Background**

Cacchione resides in Erie, Pennsylvania. (Docket No. 1, ¶ 4).[1] He is the owner, sole shareholder, and operator of S Corporation, Dovetail Gallery, Inc. ("Dovetail"). (*Id.* ¶ 11; Docket No. 93, ¶ 14; Docket No. 93-2 pg. 22). On December 12, 2018, the Government filed a Complaint for Federal Taxes against Cacchione to collect alleged unpaid income taxes and trust fund recovery penalties. (Docket No. 1). Therein the Government alleged Cacchione had unpaid federal income

---

[1]   Because Cacchione resides in Erie, venue is appropriate in this district. 28 U.S.C. § 1396.

tax from 2007, 2013, 2014,[2] 2015, and 2016, totaling $152,817.07. (*Id.* ¶¶ 5, 9). The Government further alleged that Cacchione willfully failed to pay federal employment tax withholdings for Dovetail employees as required by the Federal Insurance Contributions Act. (*Id.* ¶¶ 11, 15). Therefore, pursuant to 26 U.S.C. § 6672, Cacchione was personally liable for an amount equal to the unpaid contributions (*id.*), which totaled $317,129.85 for tax periods in 2010,[3] 2011, 2016, and 2017. (*Id.* ¶¶ 16–17). The Government sought a judgment against Cacchione for his income tax liabilities and trust fund recovery penalties with statutory additions including interest, costs of prosecution, and any other just and equitable relief. (*Id.* ¶¶ A–D).

Thereafter, the Government first moved for summary judgment in this matter on December 8, 2020. (Docket No. 50). Cacchione requested extensions for his response several times, in part because the parties were attempting to resolve the matter by settlement. (*See e.g.*, Docket No. 58). But before filing a response, Cacchione filed a Consent Motion to Reopen Discovery, which the Court granted on April 19, 2021. (Docket No. 66). Therein the Court reopened fact discovery until July 16, 2021, for discovery with respect to Cacchione's "claim that his income tax liability for 2016 should be adjusted based on his amended 2016 income tax return" and his "claim that his income tax liability for 2013 should be adjusted based on net operating losses carried back from 2018 under the [Coronavirus Aid, Relief, and Economic Security ("CARES")] Act [(2020)]." (*Id.*). After reopening discovery, the Court denied the Government's first summary judgment motion without prejudice. (Docket No. 67). Around this same time, on March 11, 2021, Cacchione filed a 2018 1040-X, Amended Individual Income Tax Return (hereinafter the

---

[2]   The Government indicates in its summary judgment brief that Cacchione's 2014 income tax liability is paid in full. (Docket No. 88, pg. 1 n.1).

[3]   The Government indicates in its summary judgment brief that the trust fund recovery penalty for the last quarter of 2010 is paid in full. (Docket No. 88, pg. 1 n.2).

2

"Amended Return") showing a 2018 net operating loss ("NOL") for Dovetail of $202,840. (Docket No. 93-3).

At the close of discovery,[4] the Government filed the motion for summary judgment presently under review. (Docket No. 87). At that time, the Government updated its figures for Cacchione's alleged unpaid taxes to $180,053.69 for income tax liabilities and $249,744.43 for trust fund recovery penalties. (Docket No. 87-1, pgs. 3–4). The Government's motion is fully briefed, oral argument was held on January 11, 2024 ("Oral Argument"), and the motion is ripe for decision.

II.     **Standard of Review**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those "that might affect the outcome of the suit under the governing law." *Boyle v. Cnty. of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Anderson*, 477 U.S. at 247–48). A dispute pertaining to such a fact is "'genuine' if a reasonable jury could possibly hold in the nonmovant's favor with regard to that issue." *Id.* (quoting *Anderson*, 477 U.S. at 247–48). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine issue* of *material* fact." *Anderson*, 477 U.S. at 247–48. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by … citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including

---

[4]  As the parties requested a number of extensions of the reopened discovery deadline (*see* Docket Nos. 68, 70, 73, 75, 78, 80), discovery was not ultimately completed in this matter until August 9, 2022. (Docket No. 83).

those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the Court must draw all inferences in a light most favorable to the non-moving party without weighing the evidence or questioning the witnesses' credibility. *Boyle*, 139 F.3d at 393. The movant has the burden of demonstrating the absence of a genuine issue of material fact, while the non-movant must "make a showing sufficient to establish the existence of an element essential to that party's case" for those elements "on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("*Catrett*"). If the movant has pointed to sufficient evidence of record to demonstrate that no genuine issues of fact remain, the burden is on the non-movant to search the record and detail the material controverting the movant's position. *Schulz v. Celotex Corp.*, 942 F.2d 204, 210 (3d Cir. 1991). Rule 56 requires the non-moving party to go beyond the pleadings and show, through the evidence of record, that there is a genuine issue for trial. *See Catrett*, 477 U.S. at 324.

### III. Legal Analysis

With its motion for summary judgment and opening brief, the Government submitted account transcripts with Internal Revenue Service ("IRS") assessments to prove the amount of Cacchione's alleged unpaid taxes (Docket No. 88, pg. 2), and argued that such transcripts were enough to justify judgment in its favor because such assessments are presumed to be correct and Cacchione had not presented evidence to overcome the presumption. (*Id.* at pgs. 2–3). In opposition to the motion, Cacchione pointed to his Amended Return and argued that pursuant to the CARES Act he could carry back Dovetail's 2018 $202,840 NOL to 2013 and eliminate his income tax liabilities. (Docket No. 92, pgs. 3–4). He argued that he had substantiated his returns and the 2018 NOL, thus overcoming the presumed correctness of the Government's assessments.

4

(*Id.* at pg. 5). With respect to the trust fund recovery penalties, Cacchione argued any judgment against him should be stayed because such liabilities had been addressed in Dovetail's Chapter 11 plan. (*Id.*).

In its reply, the Government argued that Cacchione could not use Dovetail's 2018 NOL to resolve his income tax liabilities for two reasons: (1) Cacchione's submission of QuickBooks records, unexplained bank records, and his accountant's deposition testimony could not substantiate the loss; and (2) Cacchione failed to submit any evidence showing his basis in Dovetail at the beginning of 2018. (Docket No. 98, pgs. 3–5). With respect to trust fund recovery penalties, the Government argued that Dovetail's Chapter 11 reorganization was a totally separate matter such that it would be inappropriate to stay judgment against Cacchione for administration of Dovetail's Chapter 11 plan. (*Id.* at pgs. 5–6). At Oral Argument, Cacchione had the opportunity to respond to the two issues the Government raised with respect to whether he could use Dovetail's 2018 NOL toward his income tax liabilities. And he argued that he had substantiated Dovetail's 2018 NOL and his basis in Dovetail at the beginning of 2018.

*Income Tax Liabilities*

The IRS Commissioner's tax assessments are "entitled to a legal presumption of correctness." *United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 242 (2002); *United States v. Byock*, 130 F. App'x 594, 595 (3d Cir. 2005) (per curiam) ("An assessment of taxes by the Commissioner of the IRS is presumptively correct."). Accordingly, "[a]n IRS assessment … establishes a *prima facie* case of liability against a taxpayer." *United States v. Beam*, No. 1:16-CV-00387, 2018 WL 2934009, at *3 (M.D. Pa. June 12, 2018) (quoting *United States v. Green*, 201 F.3d 251, 253 (3d Cir. 2000) (cleaned up)); *United States v. Stuler*, 396 F. App'x 798, 801 (3d Cir. 2010). Taxpayers must be afforded "the opportunity to prove that [such a] determination was incorrect," *Anastasato*

5

*v. Comm'r*, 794 F.2d 884, 888 (3d Cir. 1986), but they bear the burden of overcoming the presumption. *Francisco v. United State*s, 267 F.3d 303, 319 (3d Cir. 2001) (citation omitted); *Stuler*, 396 F. App'x at 801 (citing *Francisco*, 267 F.3d at 319).

In this matter, Cacchione has sought to overcome the presumption of correctness of assessments against him by showing that he is entitled to a NOL deduction. "Deductions are a matter of legislative grace, and a taxpayer bears the burden of proving that he is entitled to the deductions claimed." *Higbee v. Comm'r*, No. 14035-99, 2001 WL 617230, 116 T.C. 438, 440 (T.C. June 6, 2001); *Taylor v. Comm'r*, No. 6632-08, 2009 WL 3326640, at *6 (T.C. Oct. 15, 2009) (citing *INDOPCO, Inc. v. Comm'r*, 503 U.S. 79, 84 (1992)). This includes "the burden of substantiating the amount and purpose of the claimed deduction." *Higbee*, 116 T.C. at 440; *Taylor*, 2009 WL 3326640, at *6. *See New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934) ("[A] taxpayer seeking a deduction must be able to point to an applicable statute and show that he comes within its terms.").

An individual taxpayer who seeks a deduction based on the NOL of an S corporation "may not claim net operating losses … in excess of the sum of the shareholder's bases in stock and debt of the S corporation." *Taylor*, 2009 WL 3326640, at *7 (citing 26 U.S.C. § 1366(d)(1)); *Bergman v. United States*, 174 F.3d 928, 931–32 (8th Cir. 1999)). That is, Section 1366(d)(1) "limits the aggregate amount of … flowthrough losses and deductions that a shareholder may claim to the sum of (1) his or her adjusted basis in the stock of the S corporation and (2) his or her adjusted basis in any indebtedness of the S corporation to the shareholder." *Wright v. Comm'r*, No. 3276-05, 2007 WL 654353, at *6 (T.C. Mar. 5, 2007). "Section 1367 specifies adjustments to basis applicable to investments in S corporations." *Id.*[5] The S corporation shareholder who seeks an

---

[5] "Basis in S corporation stock is increased by income passed through to the shareholder under section 1366(a)(1) and decreased by, inter alia, distributions not includable in the shareholder's income

NOL deduction must, therefore, establish basis. *Broz v. Comm'r*, 137 T.C. 46, 60 (2011) (a "shareholder bears the burden of establishing his or her basis"); *Jasperson v. Comm'r*, No. 19496-13, 2015 WL 5729803, at *3 (T.C. Sept. 22, 2015). With that, they "bear the burden of maintaining the records needed to establish their entitlement." *Hargis v. Comm'r of Internal Revenue*, No. 14716-15, 2016 WL 7396080, at *10 (T.C. Dec. 21, 2016). Tax returns alone do not substantiate basis. *Wienke v. Comm'r of Internal Revenue*, 2020 WL 6060443, at *5, 120 T.C.M. (CCH) 263 (T.C. 2020). And "voluminous, unverified, and indiscriminate documentation does not provide adequate substantiation of the items … reported on … tax returns." *Jasperson*, 2015 WL 5729803, at *4.

As indicated above, Cacchione sought to overcome the presumption that the Government's income tax liability assessments against him are correct by asserting his entitlement to a deduction for Dovetail's 2018 NOL pursuant to the CARES Act which allows the carry back of such a loss for the five preceding taxable years.[6] Because Cacchione bears the burden of proving basis for his entitlement to a deduction, he must make a showing that there is a genuine issue to be tried with respect thereto. *Catrett*, 477 U.S. at 324. Cacchione did not address basis in his response in opposition to the Government's motion directly. He argued merely that he had produced detailed records of expenses and income for all requested tax years, personal and business bank records corresponding to the QuickBooks records produced and tax returns filed, and testimony of his

---

pursuant to section 1368; items of loss and deduction passed through to the shareholder under section 1366(a)(1); and certain nondeductible, noncapital expenses. Sec. 1367(a)." *Wright*, 2007 WL 654353, at *6; *Bergman*, 174 F.3d at 931–32 (explaining that basis in an S-corporation comes from capital contributions or from directly lending to the company).

[6] CORONAVIRUS AID, RELIEF, AND ECONOMIC SECURITY ACT, PL 116-136, March 27, 2020, 134 Stat 281, 353; *Tax Treatment of Net Operating Losses (NOLs) in the Coronavirus Aid, Relief, and Economic Security (CARES) Act*, CONGRESSIONAL RESEARCH SERVICE (May 13, 2021), https://crsreports.congress.gov/product/pdf/IN/IN11296#:~:text=The%20CARES%20Act%20allows%20firms,80%25%20offset%20under%20permanent%20law.

accountant substantiating his tax returns and claimed losses.  (Docket No. 92, pg. 4).  In his response in opposition to the Government's statement of undisputed material facts, Cacchione consistently premised his denial of alleged individual income tax liabilities on the 2018 NOL shown on his Amended Return.[7]

At Oral Argument, the Government and Cacchione agreed that Cacchione's basis in Dovetail was zero in 2012.  The Government argued that to defeat its summary judgment motion, Cacchione needed to point to some evidence in the record that would explain how Cacchione's basis went from zero in 2012 to sufficient basis in 2018 to deduct his S corporation's $202,840 loss.  The Government further argued that the QuickBooks and bank records Cacchione had produced were probative of loss, not basis, and therefore did not help Cacchione.  Cacchione argued in response that Jim Gloekler's (his accountant) testimony regarding his calculation of basis for purposes of tax preparation was sufficient to defeat the Government's summary judgment motion.  However, Cacchione conceded that the record lacked source documents that could track basis from 2012 to 2018.

The Court has considered Cacchione's arguments and has determined that Cacchione failed to show there is a genuine issue for trial.  Cacchione has not identified any part of Gloekler's testimony that indicates that Gloekler could substantiate a statement of Cacchione's basis at the beginning of 2018.  Neither Gloekler's testimony concerning his tax preparation activities, nor Dovetail's "tax returns and workpapers from his tax return preparers to show the presumed

---

[7] Cacchione's general references to the record lacked the specificity necessary for denials of facts contained in a moving party's concise statement of material facts.  LCvR 56.C.1.b.  In support of his additional facts and denials of the Government's concise factual statement, Cacchione cited his submission of "Quickbooks accounting software records supporting the Amended Return," "bank records corresponding to and supporting Dovetail's Quickbooks records," and his accountant's testimony regarding the "process he followed to amend the return, based upon the accounting records and information provided by Defendant."  (Doc. No. 93, pg. 4).

calculated value of his basis in the corporation" are, "without any substantiation of their numeric content, … a proper means of establishing basis." *Jasperson*, 2015 WL 5729803, at *3.

The party that has the burden to make a showing at trial must scour the record to point to facts that could establish an essential element of its case. Cacchione did not point to specific facts in the record that could support the element of basis he would need to prove to benefit from Dovetail's 2018 NOL. Out of an abundance of caution, the Court scoured the record to determine whether there was evidence that could substantiate Cacchione's basis in Dovetail in 2018, but the Court has found no such evidence. Accordingly, the Court will grant the Government's summary judgment motion with respect to individual income tax liabilities.

*Trust Fund Recovery Penalties*

Turning to Cacchione's argument for a stay of any judgment concerning his trust fund recovery penalties, the Internal Revenue Code "require[s] employers to withhold federal social security and income taxes from the wages of their employees." *Greenberg v. United States*, 46 F.3d 239, 242 (3d Cir. 1994); 26 U.S.C. §§ 3102, 3402. Such withholdings are held "in trust" for the United States. *Id.* (citing 26 U.S.C. § 7501(a)). "Any person required to collect, truthfully account for, and pay over" taxes that are held in trust, "who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, *be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over*." 26 U.S.C. § 6672(a) (emphasis added). For liability to adhere under Section 6672, the individual subject to penalty must be a "responsible person" whose failure to pay the tax at issue was "willful." *Greenberg*, 46 F.3d at 242. "[A] responsible person … is one who is 'required

9

to collect, truthfully account for or pay over any tax due to the United States.'" *Id.* at 242–43 (quoting *United States v. Carrigan*, 31 F.3d 130, 133 (3d Cir. 1994)).

In its Statement of Undisputed Material Facts, the Government indicated that "[a]s of October 5, 2022, Gary Cacchione owe[d] the United States $249,744.43, plus statutory additions to tax, including interest, accruing after that date for trust fund recovery penalties for the first quarter of 2011, the last three quarters of 2016, and the first three quarters of 2017." (Docket No. 89, ¶¶12–13 (citing Winter Decl. ¶ 19 & Ex. B2.)). For support of that figure, the Government cited a declaration attached to its summary judgment motion wherein Justin Winter, the Revenue Officer Advisor within the IRS assigned to Cacchione's case, relied on account transcripts to show Cacchione's accumulated trust fund recovery penalties. (Docket No. 87-1, ¶¶ 18–19).

Cacchione has not disputed the correctness of the trust fund penalties assessed by the IRS; rather, he has argued in his brief opposing the Government's motion for summary judgment that "judgment should be stayed to allow the Chapter 11 plan to proceed." (Docket No. 92, pg. 5 (citing *United States v. Yuill*, No. CIV.A. 07-432, 2007 WL 3274156, at *3 (W.D. Pa. Nov. 5, 2007)). He cited the "first-filed" rule concerning parallel litigation in different federal courts and argued that because his "trust fund liabilities have been addressed and adjudicated in the Chapter 11 Plan (Defendant's COSF, ¶ 13) … this Court should defer to the administration of that Plan ongoing in the Bankruptcy Court." (*Id.*).

Though Cacchione cited *United States v. Yuill*, that case is inapposite. In that matter, Yuill had filed suit in the United States District Court for the Northern District of West Virginia wherein she sought an order deciding she was not a "responsible party" for penalties imposed under Section 6672. 2007 WL 3274156, at *1. The United States later brought an action against her and a co-defendant in the United States District Court for the Western District of Pennsylvania wherein it

10

alleged that neither Yuill nor her co-defendant had paid assessments for past taxable periods. *Id.* at *2. The United States also filed a motion to stay in the Northern District of West Virginia. *Id.* That motion was denied and, subsequently, Yuill brought a motion before the Western District of Pennsylvania to stay the United States' claims against her under the first-filed rule. *Id.* at *3 (citing *E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969, 971–72 (3d Cir. 1988) (explaining that the first-filed rule gives courts the power "to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court" and that such power is "not a mandate")). The court in that matter considered that the Government "apparently concede[d] that these two cases are, in fact, duplicative." *Id.* at *4. And the court noted there was "considerable tension between the United States' concession that the[] proceedings (as they relate to Yuill) [we]re duplicative of the proceedings in the Northern District of West Virginia and its insistence that [the court] should [have] nevertheless proceed[ed] to adjudicate the matter." *Id.* Ultimately the court decided that it would not "conduct duplicative proceedings related to Yuill's dispute with the United States" and that the most appropriate remedy was to sever her case from her co-defendant's case and transfer the United States' claims against Yuill to the Northern District of West Virginia. *Id.* at *7.

That case—where the question of personal responsibility for trust fund penalties was relevant to *both* cases at issue—is totally different than Cacchione's case. As the Government pointed out, Dovetail's employment tax liabilities that are addressed in the Chapter 11 plan are distinct from Cacchione's personal liability for Section 6672 penalties. (Docket No. 98, pgs. 2, 5–6). Under Section 6672, Cacchione is personally responsible for trust fund recovery penalties regardless of how such penalties are addressed in Dovetail's reorganization. *See Matter of Ribs-R-Us, Inc.*, 828 F.2d 199, 201 (3d Cir. 1987) ("The IRS need not attempt to collect from the

11

employer before assessing a responsible person under section 6672." (citing *Datlof v. United States*, 370 F.2d 655, 656 (3d Cir. 1966)); *see also E. Wind Indus., Inc. v. United States*, 108 F. App'x 723, 727 (3d Cir. 2004) ("The personal liability created under § 6672 is separate and distinct from that imposed upon the employer under § 3403 of the Code." (*quoting Datlof*, 370 F.2d at 656)). Such liability "is separately assessed against, and is collectable from the assets belonging to a responsible person." *United States v. Huckabee Auto Co.*, 783 F.2d 1546, 1549 (11th Cir. 1986).

Dovetail's Chapter 11 plan appears to appropriately acknowledge the separateness of Section 6672 penalties insofar as in the section that addresses stipulations with taxing bodies, there is an acknowledgment that the "sale of the personal assets of Gary Cacchione remains exclusively under the jurisdiction of the United States District Court for the Western District of Pennsylvania at Case No. 1:18-cv-00382-SPB and will not be pledged to the Plan; however, the Debtor shall receive a dollar-for-dollar credit of the amounts paid by Mr. Cacchione toward trust fund taxes in that Case." (Docket No. 93-1, pgs. 12–13). Accordingly, far from there being duplicative proceedings concerning the trust fund penalties in this Court and in the Bankruptcy Court, Dovetail's Chapter 11 Plan specifically acknowledges this Court's jurisdiction over the issue of assessment of trust fund recovery penalties against Cacchione. For this reason, the Court will also grant the Government's motion for summary judgment with respect to the trust fund recovery penalties.

### IV.   Conclusion

For the forgoing reasons, the Government's motion for summary judgment is granted. Judgment will be entered for the Government and against Cacchione in the amount of $180,053.69 for income tax liabilities for 2007, 2013, 2015, and 2016, and in the amount of $249,744.43 for

trust fund recovery penalty liabilities for the first quarter of 2011, the last three quarters of 2016, and the first three quarters of 2017, both as of October 5, 2022, plus statutory additions provided by law that continue to accrue and less payments made thereafter.[8]

An appropriate order follows.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

Dated:         January 30, 2024

Cc/ecf:        All counsel of record

---

[8] The Court notes that the Government also asked for costs of prosecution, but has cited no authority to justify an award of such. Costs of prosecution will not be awarded in this matter. *See United States v. Tanchak*, No. CIV. A. 07-1475 FLW, 2009 WL 348270, at *8 (D.N.J. Feb. 5, 2009).